CHARLES W. DEEDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. A. DEEDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES F. KETTERING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13136–13138. Promulgated January 10, 1929.

*W. W. Spalding, Esq.*, for the petitioners.
*W. F. Wattles, Esq.*, for the respondent.

OPINION.

MURDOCK: It is contended on behalf of the petitioners that the funds lost by them through advances made to the Smith Gas Engineering Co. and through investment in its stock were lost in 1921; that in the case of the indebtedness this loss was established by a charging off on the books and by an ascertainment of worthlessness in that year, while in the case of the stock, the company's financial condition was such at the close of the year 1921 as to warrant the assertion that the stock was then worthless and had no potential value for future years, despite the fact that liquidation did not actually occur until over five years later.

The Revenue Act of 1921 contains the following provision in regard to deductions from gross income on account of losses and bad debts.

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

\* \* \* \* \* \* \*

(7) Debts ascertained to be worthless and charged off within the taxable year \* \* \*.

Our inquiry is therefore, with respect to the stock, whether the corporation's financial condition was so hopeless as to render the shares. of no value, and, with respect to the indebtedness of the company to each of the petitioners, whether in each case that indebtedness was actually ascertained to be worthless and charged off within the taxable year 1921. The petitioners have cited several decisions to sustain their right to the deductions in question, all of which tend to show that the courts have been liberal in the interpretation of those

portions of the statute allowing deductions of this nature. Among other authorities the petitioners have cited the case of *United States v. S. S. White Dental Manufacturing Co.*, 274 U. S. 399, and *Selden v. Heiner*, 12 Fed. (2d) 474. While the court in each case expressed an unwillingness to require too nice a mathematical determination of losses and in the former case expressly stated that the law did not require a taxpayer to be an incorrigible optimist, it is our opinion that the facts in these cases clearly distinguish them from the instant case.

In the *Appeal of G. C. Krack*, 1 B. T. A. 1119, a situation somewhat similar to that presented here was before the Board. We there made the following statement:

> The disinclination of a creditor to force payment does not make a debt "worthless" as that term is used in the Act.
>
> The taxpayer's contention that he has sustained a loss as the result of purchasing the stock is answered by saying that he still holds the stock of a going concern which hopes to show a profit for 1925. The transaction is not closed. The loss, if any, has not been realized. The taxpayer can have no deductible loss until such loss has been actually sustained.

Two of the taxpayers in this case owned considerable stock in the corporation, and in all cases the losses representing what are termed "bad debts" were evidenced by the company's paper. In the case of *Winthrop Ames*, 1 B. T. A. 63, we had before us the question of a taxpayer's right to charge off as worthless advances made by him to a corporation in which he held all the stock. In considering whether or not this right existed we stated:

> To answer this question we must first accept the principle that if Mr. Ames could claim such a debt to be worthless the claim should be equally good if any other person not a stockholder had been a creditor in a like sum at that time.

We also stated:

> * * * On that basis then it is clear that the "Office of Winthrop Ames, Inc.," was not a solvent corporation but it is equally clear that no creditor could have estimated at the close of 1918 the extent of his probable loss. It is apparent that at the close of 1918 the corporation "Office of Winthrop Ames, Inc.," presented the case of a going business unable to meet its current liabilities from liquid assets and indeed not expected to do so. Any creditor could, in these circumstances, have forced liquidation and the definite ascertainment of his loss. But this Mr. Ames did not do. Instead it is asked that the Board now speculate whether and to what extent the corporation was insolvent in 1918, and Mr. Ames' account represented a worthless debt. No such duty devolves upon us. The duty to determine that a debt is worthless in a definite sum is upon the taxpayer, he to support his conclusion with equally definite and certain evidence. * * *

In the case of *Albion Land Co.*, 1 B. T. A. 856, a situation was presented in which advances were made to a corporation after the

commencement of liquidation. We there upheld the determination of the Commissioner in disallowing the loss. In *Joseph M. Byrne*, 1 B. T. A. 996, we had before us a case of a release by a stockholder of an indebtedness due him by the corporation in which he held stock. The release was given on January 1, 1919, and a deduction was sought in that year. The corporation was dissolved and its assets distributed in June, 1921. We upheld the determination of the Commissioner in disallowing the losses.

In our opinion the present case is strikingly similar to the case of *Winthrop Ames*, *supra*. While the Smith Gas Engineering Co. is now liquidated, it was far from liquidation in the year 1921, the taxable year in question. The petitioners' manager testified as to the estimated value of certain assets for liquidation purposes as of the year 1921. The liquidating values, as of 1921, were fixed by deducting varying percentages of the value of the assets from such assets, the percentages being taken in accordance with book values by the witnesses. In some instances the book value of the assets which was the basis upon which the witness fixed the liquidating value was reduced by a large percentage on the theory that it had no value to anyone but someone carrying on the same business which the company had been carrying on, or that in the event of liquidation certain materials would have only a scrap value. While the assets realized on liquidation were less than the values fixed for liquidating purposes as of 1921, this fact does not in our opinion show that such liquidating values were necessarily conservative. The witness failed to explain except in very general terms why he took the percentages of discount on the book value which he used. We can not regard this testimony as having sufficient weight to warrant us in fixing a value on the corporate assets for liquidating purposes as of the year 1921. So that in this case, as in the case of *Winthrop Ames*, it may justly be remarked that the petitioners failed to take steps which would have resulted in a definite ascertainment of their losses, and as in that case the Board is asked to speculate to what extent the corporation was insolvent in the taxable year in question.

It is evident that the taxpayers believed there was hope for the future at the close of the year 1921. That fact in our opinion is entirely inconsistent with a charging off of the debts in that year. Certainly, it can not be said that such debts were then ascertained to be worthless.

While the petitioners E. A. Deeds and Kettering did not own a majority of the common stock, they were in a position by reason of their advances to force the corporation into liquidation. Not only did they refrain from taking this step, but they continued to make

substantial advances to the corporation during the greater part of the remainder of the corporation's existence. While some of these advances may have been necessitated by the fact that the corporation paper was guaranteed, there is no way for us to determine how much of the money so advanced was necessitated by this fact, and how much was advanced voluntarily, nor is it possible to determine with certainty the total amounts of these advances either prior or subsequent to December 31, 1921, since on this point the evidence is conflicting and gives rise to much confusion. There is some showing that the petitioners were reluctant to take steps to liquidate the business because it was being conducted by friends. We are not convinced, however, that their assent to continue the corporate operations was the result of altruistic motives.

It appears from the financial statement at the close of the year 1921 that there were assets sufficient to satisfy in part the claims of the petitioners. That being the case, they could not in any event be allowed a deduction on account of the entire indebtedness and it has not been shown how much, if any, of the indebtedness could have been paid.

With respect to deducting the investment in stock, the facts are again unfavorable to the petitioners. The value or lack of value of the corporate assets not being satisfactorily shown, we can not say that the stock was worthless. *John B. Atkins et al.*, 9 B. T. A. 140; *Lillie M. Clark*, 9 B. T. A. 460; *E. O. Walgren*, 4 B. T. A. 1066; *Royal Packing Co.*, 5 B. T. A. 55.

*Judgment will be entered for the respondent.*